IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| S.C.G., *a minor child, by and through his next friend*, JAMANIC REAVES, *and* K.L.P., *on behalf of themselves and all others similarly situated*,<br><br>        Plaintiffs,<br><br>    v.<br><br>CANDICE BROCE, *in her Official Capacity as Commissioner of the Department of Human Services*,<br><br>        Defendant. | CIVIL ACTION<br>1:22-cv-01324-LMM |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

COMES NOW Plaintiffs SCG and KLP, by and through their counsel, and file their Response in Opposition to Defendant's Motion to Dismiss Amended Complaint [Doc. 13] and shows this Court as follows:

## I.    INTRODUCTION

Plaintiffs bring this civil rights action for declaratory and injunctive relief under 42 U.S.C. § 1983 seeking to enjoin Defendant Broce in her official capacity as the Commissioner of the Georgia Department of Human Services ("DHS") from

continuing to violate the rights of the Plaintiffs and similarly situated

undocumented children and youth in the custody of the Georgia Division of Family

and Children Services ("DFCS") by failing to timely implement their case plans in

violation of the Adoption Assistance and Child Welfare Act ("AACWA"), 42

U.S.C. § 671(a)(16) and O.C.G.A. §§ 15-11-201 & 203(b)(2) and by failing to

provide notice of the denial of extended foster care services and of a right to a

hearing in violation of the Due Process Clause of the Fourteenth Amendment to the

U.S. Constitution and the Due Process Clause of the Georgia Constitution.

Defendant seeks dismissal of Plaintiffs' claims under Fed.R.Civ.P. 12(b)(1)

and (6).  None of Defendant's arguments have merit and her motion is due to be

denied.

## II.    FACTUAL BACKGROUND

The Plaintiffs are undocumented youth who were in DFCS custody pursuant

to orders of Georgia Juvenile Courts.  The Juvenile Courts found that reunification

of the Plaintiffs with one or both parents was not viable due to abuse, battery,

abandonment, or neglect and that it would not be in the Plaintiffs' best interests to

be returned to their country of nationality or last residence.  Both state and federal

law requires DFCS to develop and implement a detailed case plan for each of the

Plaintiffs upon entering foster care. *See* 42 U.S.C. § 671(a)(16); O.C.G.A. § 15-11-201.

Because Plaintiffs were undocumented children in foster care whom the Georgia Juvenile Courts determined should not be reunified with one or both parents due to abuse or neglect, they were eligible for  Special Immigrant Juvenile ("SIJ") classification. *See* 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11.  The classification of SIJ status was created by Congress to provide humanitarian protection for abused, neglected, or abandoned child immigrants eligible for long-term foster care. *See* U.S. Citizenship and Immigration Services Policy Manual, Volume 6, Part J, Chapter 1 (available at:  https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-1).  Securing SIJ status protects the young person from removal from the United States.  A child or youth with SIJ status may adjust her or his status to that of a lawful permanent resident, obtain work authorization, and eventually apply for U.S. citizenship. *See* 8 U.S.C. § 1255(h).

DFCS Policy No. 10.17 required the agency to pursue a permanency case plan for Plaintiffs and similarly situated undocumented children in DFCS custody that included seeking immigration status relief under the SIJ classification. [Doc. 11-1].  Plaintiffs allege that DFCS developed a permanency case plan for each Plaintiff which plan included seeking the SIJ classification for each Plaintiff.

Because Plaintiffs were not candidates for reunification with their parents, DFCS was required to make reasonable efforts to complete whatever steps were necessary to finalize Plaintiffs' permanency case plans. O.C.G.A. § 15-11-203(b)(2); 42 U.S.C. § 671(a)(15)(E)(ii). Plaintiffs allege DFCS failed to timely pursue SIJ classification for Plaintiffs as part of their permanency case plans by retaining qualified legal counsel to apply for the SIJ classification. Plaintiffs allege DFCS will regularly retain legal counsel for children in custody if required to obtain needed benefits or services as part of the permanency plan such as for SSI benefits or special education services. A pro bono immigration attorney had to be located and engaged for both Plaintiffs. Plaintiffs allege that as a result of DFCS's actions and inactions, Plaintiffs' applications for the SIJ classification were substantially delayed and neither Plaintiff had SIJ status when they turned 18 years of age.

Pursuant to the John H. Chafee Foster Care Program for Successful Transition to Adulthood, 42 U.S.C. 677, Georgia provides extended foster care services to youth between the ages of 18 and 21. *See* O.C.G.A. §§ 15-11-340 through 15-11-342. Under Georgia law, children in foster care who do not find a permanent home before their 18th birthday through reunification with family, guardianship, or adoption are eligible for extended foster care until the age of 21. *See* O.C.G.A. § 15-11-340. Children in extended foster care can continue to

4

receive residential, vocational, and educational support necessary to their

becoming responsible adults.  Youth in extended foster care between the ages of 18

and 21 are defined as "children" pursuant to OCGA § 15-11-2 and remain eligible

for these services so long as they meet one of the following criteria set forth in

OCGA § 15-11-340 (a):

(1) Be completing secondary education or a program leading to an equivalent credential;

(2) Be enrolled in an institution which provides postsecondary or vocational education;

(3) Be a participant in a program or activity designed to promote or remove barriers to employment;

(4) Be employed for at least 120 hours per month;

(5) Be employed for 80 hours per month, provided that he or she is also engaged in one of the activities described in paragraphs (1) through (3) of this subsection or can only work 80 hours per month due to a medical condition; or

(6) Be incapable of doing any of the activities described in paragraphs (1) through (5) of this subsection due to a medical condition.

Both Plaintiffs met the eligibility requirements for extended foster care

services.  Defendant did not find a permanent home for Plaintiffs prior to either of

them turning 18 through reunification with family, guardianship, or adoption.

Plaintiff SCG is eligible for extended foster care because of his disability and the

fact that he remains in high school.  Plaintiff KLP is also eligible for extended

foster care because she is still in high school.

Plaintiff K.L.P was provided extended foster care services after turning 18 but was ejected from extended foster care by Defendant around November, 2021. Plaintiff K.L.P. was not provided by Defendant with notice of the reasons for the denial of extended foster care services nor was she provided an opportunity to request a hearing to challenge the denial.  Plaintiff S.C.G. was not afforded by Defendant an opportunity to apply for extended foster care services upon his eighteenth birthday. Plaintiff S.C.G. was also not informed in writing or otherwise that he was denied extended foster care services or provided an opportunity to request a hearing to challenge the denial.

### III.   ARGUMENT

#### A. Standing and Mootness

Defendant first argues that Plaintiffs lack standing and their claims are moot. Defendant's argument is without merit.

"In order to have constitutional standing, it is axiomatic that a federal action must present a real case or controversy under Article III of the Constitution." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 732 (11th Cir. 2018).  That requirement must be met at a case's inception, and "a justiciable case or controversy" must be "present 'at all stages of review.'" *Id*. at 733 (quoting *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1190 (11th Cir. 2011)). "[W]hen the reviewing

court can no longer offer any effective relief" to a prevailing party, a case becomes moot. *Id*. "[A]n action that is moot cannot be characterized as an active case or controversy." *Hall v. Sec'y, Ala*., 902 F.3d 1294, 1297 (11th Cir. 2018) (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (per curiam)); *see also A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co*., 925 F.3d 1205, 1212 n.2 (11th Cir. 2019) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980))).

The case-or-controversy requirement applies to actions for declaratory or injunctive relief. To obtain such relief, a plaintiff "must allege and ultimately prove 'a real and immediate—as opposed to a merely hypothetical or conjectural—threat of future injury.'" *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994)).

Defendant first makes the broad argument that because Plaintiffs are both now 18 years of age their claims fail because they cannot allege a substantial likelihood of future injury or that the injury will be redressed by a favorable decision. [Doc. 13-1 at 9].

Defendant mischaracterizes both her obligations to youth who have aged out of foster care as well as her obligations under state and federal law.  Pursuant to DFCS policy 13.01, "When a youth reaches the age of 18 he or she may elect to remain in a foster care setting without interruption, and continue to receive independent living services if eligibility criteria was previously met." Defendant contends that Plaintiffs have no ability to qualify for extended foster care services due to their age and immigration status.  Breaking down this argument requires a close look at both state and federal law and policy.

First, Defendant relies heavily on 8 USC § 1621 and OCGA § 50-36-1 to argue that extended foster care benefits cannot be provided because Plaintiffs are not "qualified aliens."  The first statute, which prohibits the provision of certain state and federal benefits to aliens without status, does not apply because these Plaintiffs fall under a statutory exception to that rule.  Specifically excepted are:

> (4) Programs, services, or assistance (such as soup kitchens, crisis counseling and intervention, and short-term shelter) specified by the Attorney General, in the Attorney General's sole and unreviewable discretion after consultation with appropriate Federal agencies and departments, which (A) deliver in-kind services at the community level, including through public or private nonprofit agencies; (B) do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (C) are necessary for the protection of life or safety.

8 U.S.C.S. § 1621 (b) (4).

Applying her "sole and unreviewable discretion," then-Attorney General Janet Reno made the appropriate determination on January 6, 2001 at 66 FR 3613. [available at: https://www.federalregister.gov/documents/2001/01/16/01-1158/final-specification-of-community-programs-necessary-for-protection-of-life-or-safety-under-welfare]. That determination clarifies that among the "types of programs, services, and assistance enumerated in this Order are ones that Congress authorized the Attorney General to except from limitations on the ban on the availability of federal, state, or local public benefits imposed by Title IV of the Act" and that "[n]either states nor other service providers may use the Act as a basis for prohibiting access of aliens to any programs, services, or assistance covered by this Order."  The Order goes on to include as exceptions the following:

> (a) Crisis counseling and intervention programs; **services and assistance relating to child protection, adult protective services, violence and abuse prevention, victims of domestic violence or other criminal activity**; or treatment of mental illness or substance abuse;
> (b) **Short-term shelter or housing assistance** for the homeless, for victims of domestic violence, or **for runaway, abused, or abandoned children**;
> * * * *
> (f) **Activities designed to protect the life or safety of workers, children and youths**, or community residents;

*Id.*  (emphasis added).

Thus, the extended foster care program falls within the exceptions to the rule that States may not fund services for "unqualified" aliens.

But what about the Georgia statute, OCGA § 50-36-1? That statute does not *on its face* prohibit the expenditure of state or federal funds here. Rather, it purports to require that before spending such funds, the state must verify the immigration status of individuals over the age of 18. This statute, too, contains the same exception found in federal law:

> (d) Verification of lawful presence in the United States under federal immigration law under this Code section shall not be required:
> * * * *
> (5) For programs, services, or assistance such as soup kitchens, crisis counseling and intervention, and short-term shelter specified by the United States Attorney General, in the United States Attorney General's sole and unreviewable discretion after consultation with appropriate federal agencies and departments, which:
> (A) Deliver in-kind services at the community level, including through public or private nonprofit agencies;
> (B) Do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and
> (C) Are necessary for the protection of life or safety;

O.C.G.A. § 50-36-1(d)(5).

Covered by the attorney general's determination, as shown above, are child and adult protective services, housing for abandoned youth, and by extension the extended foster care program.

Defendant goes on to argue that SIJ status is not enough; that 8 USC § 1641 requires that to be a "qualified alien," the Plaintiffs must have their permanent resident status.  First, this argument is disposed of by the above citations demonstrating that Plaintiffs are exempted from the "qualified alien" requirements of 8 USC § 1621.  Second, such an interpretation is completely inconsistent with the purposes of the SIJ classification.  Individuals with SIJ classification are considered paroled into the United States pursuant to 8 USC § 1255 (g).  And pursuant to its March 7, 2022, policy announcement, USCIS automatically considers deferred action for up to four years for individuals with SIJ classification and may be granted employment authorization. [available at:

https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf].

Finally, the Defendants' argument is completely inconsistent with the intention of the Georgia General Assembly in enacting the extended foster care provisions.  The General Assembly intended that these young people, who had been exposed to such maltreatment that they needed to be under the protection of the State of Georgia and for whom the State agency had not been able to find a permanent home before their 18th birthdays , should be deemed "children" until age 21.  OCGA § 15-11-2 (10)(C); OCGA § 15-11-340 *et seq*.  These *children*, as the

State of Georgia defines them, remain in need of protection, housing, and support, including the support needed to pursue the humanitarian relief available to them through the path of SIJS.

This case presents an actual "case and controversy" regarding whether Defendant employed, and continues to employ, policies or practices that deny Plaintiffs and similarly situated children the fulfillment of their case plans under the AACWA, 42 U.S.C. § 671(a)(16) and O.C.G.A. §§ 15-11-201 & 203(b)(2) and that denies them extended foster care under O.C.G.A. § 15-11-340 *et seq*. when they turn 18 year of age without due process of law.  The Court can remedy Defendant's ongoing violations of Plaintiffs' rights by enjoining Defendant from failing complete the implementation of Plaintiffs' case plan which includes securing qualified legal counsel to pursue and obtain SIJ classification.  While Plaintiffs were able to ultimately submit SIJ applications through the assistance of *pro bono* counsel, those applications stand pending and have not yet been granted. Plaintiffs contend that Defendant's case planning obligation is to secure qualified immigration legal counsel *throughout* the SIJ classification process to secure the classification, not merely filing the application.  The Court can also remedy Defendant's violation of Plaintiffs' rights by enjoining Defendant from denying Plaintiffs extended foster care services without due process of law.

The harm to Plaintiffs as a result of Defendant's conduct is immediate and ongoing.  Defendant's failure to implement Plaintiffs' case plans and provide them with extended foster care services has left them abandoned without a permanent home or a means of supporting themselves and without lawful status.  Plaintiffs will continue to be subject to these harms as a direct result of Defendant's failure to meet her obligations under federal and state law.

### B. Abstention

Defendant next claims the Court lacks subject matter jurisdiction pursuant to the *Younger* abstention doctrine.  Defendant's argument is completely without merit and mischaracterizes the law governing *Younger* abstention.

*Younger* abstention is applicable where "the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72, 134 S.Ct. 584, 588, 187 L.Ed.2d 505 (2013).  The Supreme Court's "dominant instruction" to lower federal courts, however, is that "even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" Id., 571 U.S. at 81-82 (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984)).  "[F]ederal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refuse to decide a

case in deference to the States.'" *Id*. at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans (NOPSI)*, 491 U.S. 350, 368, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)).

   "Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Id*. at 72.  Only "exceptional circumstances" warrant deviation from the general rule that federal courts must exercise the jurisdiction that is given to them. *Id*. at 78 (quoting *NOPSI*, 491 U.S. at 368, 109 S.Ct. 2506). Those exceptional circumstances arise in *only* three contexts: (1) an ongoing state criminal prosecution, (2) certain civil enforcement proceedings, and (3) "pending 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.' " *Id*. (quoting *NOPSI*, 491 U.S. at 368, 109 S.Ct. 2506). These three "exceptional" categories "define *Younger's* scope." *Id*.

   If the Court finds that one of these exceptional circumstances is present, there are "additional factors" to be considered. *Id*. at 81 (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)).  The *Middlesex* factors include circumstances in which there is (1) an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges. *Id*.

The Supreme Court in *Sprint* clarified that *Younger* extends to the three "exceptional circumstances" identified in *NOPSI*, but no further. *Sprint*, 571 U.S. at 82.  Only if the state proceedings at issue fall within one of the three *Younger* exceptions, must the Court then evaluate whether the *Middlesex* factors support abstention.  As the Supreme Court explained in *Sprint*, the three *Middlesex* factors, divorced from one of the three types of exceptional proceedings which define *Younger's* scope, "would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." *Id*. at 81.

*Younger* abstention is inappropriate in this matter as none of the three "exceptional" categories of state proceedings exist in this case.  As an initial matter, Defendant fails to identify any ongoing state proceedings.  Assuming, *arguendo*, there were an ongoing juvenile court proceeding, it would not fit the first two exceptions as it would be neither a criminal nor a quasi-criminal proceeding.  As for the third exception, it involves federal plaintiffs seeking to undo state court orders – such as contempt or bond orders – that are "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint* at 78.  Defendant is unable to identify such an order.  Instead, Defendant skips over the three exceptions and inappropriately applies the *Middlesex* factors to support

abstention Defendant relies on Eleventh Circuit authority that predates *Sprint* and,
contrary to *Sprint*, relies solely on the *Middlesex* factors as the dispositive test of
whether abstention is appropriate. [Doc. 13-1 at 12-13]. *See 31 Foster Children v.
Bush*, 329 F.3d 1255, 1274-82 (11th Cir. 2003).  Abstention is inapplicable and
Defendant's motion is due to be denied.

### C. Rule 12(b)(6)

Finally, Defendant argues that Plaintiffs have failed to state claims under
AACWA, O.C.G.A. § 15-11-200 et seq., the Due Process Clause of the Fourteenth
Amendment, and the Due Process Clause of the Georgia Constitution.  Defendant's
arguments are without merit.

Rule 8(a)(2) requires a complaint to contain "a short and plain statement of
the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
"Specific facts are not necessary; the statement need only 'give the defendant fair
notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)
(quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  To
survive a motion to dismiss for failure to state a claim, "a complaint must contain
sufficient factual matter, accepted as true, to state a claim to relief that is plausible
on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d

868 (2009).  To state a plausible claim for relief, plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant; plaintiff must offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In addition, when ruling on a defendant's motion to dismiss, the Court must accept as true all of the factual allegations contained in the complaint. *Twombly*, at 555 – 556 (citations omitted).  A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint; it does not decide the merits of the case. *Wein v. American Huts, Inc*., 313 F.Supp.2d 1356, 1359 (S.D.Fla. 2004) (citing *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984).

Defendant first attacks Plaintiffs' claims under the AACWA and O.C.G.A. § 15-11-200 *et seq*. (Counts I and II).  Defendant argues that Plaintiffs have failed to show that DFCS violated these statutes by not hiring immigrations attorneys for Plaintiffs.

AACWA requires DFCS to develop a case plan for each of the Plaintiffs when they enter Defendant's custody. 42 U.S.C. § 671(a)(16).  The case plan is a written document that includes "A plan for assuring that the child receives safe and proper care and that services are provided to the . . . child . . . in order to . . .

facilitate . . . the permanent placement of the child, and address the needs of the child while in foster care, including discussion of the appropriateness of the services that have been provided to the child under the plan." 42 U.S.C. § 675(1)(B).  "For a child who has attained 14 years of age or over, a written description of the programs and services which will help such child prepare for the transition from foster care to a successful adulthood." 42 U.S.C. § 675(1)(D).

Obviously, a successful transition to adulthood for an undocumented child will include lawful status in the United States.  The SIJ classification was created to give undocumented children such lawful status.  Consistent with its obligations under AACWA, DFCS policy requires pursuit of the SIJ classification for undocumented children.

Defendant violated Plaintiffs' rights under the AACWA when it failed to secure a qualified immigration attorney to pursue the SIJ classification.  Plaintiffs have alleged that DFCS included pursuing SIJ classification as part of Plaintiffs' case plans. [Doc. 11, ¶ 25]. Plaintiffs also allege that Defendant regularly retains legal counsel for children in DFCS custody to obtain benefits necessary for implementation of the case plan such as SSI benefits or special education services. [Doc. 11, ¶ 30].  Plaintiffs also allege that Defendants did not retain legal counsel for Plaintiffs which delayed the submission of the SIJ applications and which were

ultimately submitted by pro bono counsel. [Doc. 11, ¶¶ 29, 31-33]. Plaintiffs

further allege that they currently do not have SIJ status. [Doc. 11, ¶¶ 32-33].

Plaintiffs continue to need qualified immigration counsel to successfully secure SIJ

classification.  Plaintiffs have stated claims under the AACWA and O.C.G.A. § 15-

11-200 *et seq*. and this Court can afford Plaintiffs' relief by enjoining Defendant to

fulfill Plaintiffs' case plans and retain qualified immigration counsel to

successfully secure SIJ classification for the Plaintiffs.

Defendant's reliance on O.C.G.A. § 45-15-34 for the proposition that state

law prohibits the retention of immigration counsel for Plaintiffs while in DFCS

custody is wildly misplaced.  The statute in question grants the Georgia

Department of Law the exclusive authority "in all matters of law relating to the

*executive branch of government*…" O.C.G.A. § 45-15-34.  Plaintiffs have certainly

not alleged they are employees or agents of the executive branch of Georgia's state

government.  Nor is Defendant able to establish such a fact.  As such, the statute is

inapplicable to them.

Defendant next attacks Plaintiffs' Due Process claims under the Fourteenth

Amendment and the Georgia Constitution.  Defendant's due process argument

relies on the faulty legal conclusion that Plaintiffs must demonstrate they are

"qualified aliens."  As discussed above, Defendant's legal analysis is flawed.

"To successfully assert a Fourteenth Amendment procedural due process claim under §1983, a plaintiff must establish that (1) the defendant deprived him of a liberty or property interest protected by the Constitution; (2) the deprivation occurred under color of state law; and (3) he was not provided with constitutionally adequate process to redress the harm." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).[1]

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).  The Supreme Court in *Goldberg, supra*, held that "a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process. *Roth*, 408 at 576.  To have a property interest in a benefit, a person must "have a legitimate claim of entitlement to it," not just "an abstract need or desire for it." *Id.* at 577.  "Thus the welfare recipients in *Goldberg v. Kelly*. . . had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them." *Id.* (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)).

---

[1] The Georgia Supreme Court interprets the due process clause under the Georgia Constitution as providing the same procedural rights as the U.S. Constitution. *See Camden County v. Haddock*, 271 Ga 664, 665, 523 S.E.2d 291 (1999).

Just as the plaintiff in *Goldberg* had a property interest in welfare payments created and defined by statute, so too do Plaintiffs have a property interest in their extended foster care benefits which are created and defined by O.C.G.A. § 15-11-340 *et seq*.  Pursuant to O.C.G.A. § 15-11-340, both Plaintiffs were eligible for and entitled to extended foster care services.  Defendant had failed to find a permanent home for either Plaintiff prior to them turning 18. [Doc. 11, ¶ 41].  Both Plaintiffs remained in high school. [Id., ¶¶ 42-43]. Plaintiff SCG also has a disability. [Id., ¶ 42]. Plaintiff KLP was initially provided with extended foster care services by Defendant after turning 18 but was ejected from the program in November 2021. [Id., ¶ 44].

The next inquiry is whether the deprivation of Plaintiffs' extended foster care benefits occurred under color of state law.  "Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 924 (1982).  Plaintiffs have alleged that Defendant is a state actor operating pursuant to her authority under state law. *See* O.C.G.A. §49-2-1. [Doc 11, ¶ 14].

The final inquiry is how much process is due when the Defendant attempts to deprive Plaintiffs of their property interests in their extended foster care benefits. As the Supreme Court in *Goldberg* pronounced, due process requires that the

agency's reason for its action be stated in sufficient detail to allow the affected individual "an effective opportunity to defend by confronting any adverse witness and by presenting his own arguments and evidence orally." *Goldberg* at 267-68. "These rights are important. . . where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases." *Id*. at 268. Without effective notice, a claimant's due process right to a fair hearing is rendered fundamentally illusory. *Kapps v. Wing*, 404 F.3d 105, 124 (2nd Cir. 2005) (citing *Escalera v. New York Hous. Auth*., 425 F.2d 853, 862 (2nd Cir. 1970) (noting that a hearing would be of little value if the defendant could deny the claimants benefits based on reasons of which the claimant had no knowledge). Stating only the "ultimate reason" is insufficient notice. *See Dilda v. Quern*, 612 F.2d 1055, 1057 (7th Cir. 1980). Thus, for due process to be satisfied, Defendant must provide the specific reasons for how the decision was reached.

Plaintiff KLP alleges she was ejected from extended foster care services and was not provided by Defendant with notice of the reasons for the denial of extended foster care service nor was she provided an opportunity to request a hearing to challenge the denial. [Doc. 11, ¶ 45]. Similarly, Plaintiff SCG alleges that he was not afforded an opportunity to apply for extended foster care services

upon his eighteenth birthday. [Doc. 11, ¶ 46].  He also alleges that he was not

provided with notice of the denial of extended foster care services or provided an

opportunity to request a hearing to challenge the denial. [Doc. 11, ¶ 47].

Plaintiffs have clearly stated a claim for violations of the Due Process

Clause of the Fourteenth Amendment and Georgia Constitution.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request Defendant's Motion

to Dismiss be denied.

**Local Rule 7.1D Certification**

By signature below, counsel certifies that the foregoing document was

prepared in 14 point Times New Roman font, approved by the Court in LR 5.1B.

Respectfully submitted this 27th day of July, 2022.

s/ Joshua H. Norris
Georgia Bar No. 545854

**Law Office of Joshua H. Norris, LLC**
One West Court Square
Suite 750
Decatur, Georgia 30030
Telephone:  (404)867-6188
Facsimile:   (404)393-9680
E-mail:       josh.norris@childrenshealthlaw.org

Thomas Rawlings
Georgia Bar No. 595795

**TAYLOR ENGLISH AND DUMA LLP**
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339
Telephone:  (770) 434-6868
Facsimile:   (770) 434-7376
E-mail:  trawlings@taylorenglish.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing

**Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Amended**

**Complaint** with the Clerk of Court using the CM/ECF system which will

automatically send e-mail notification of such filing to the following attorneys of

record:

> Kirby G. Mason
> T. Mills Fleming
> HUNTER, MACLEAN, EXLEY & DUNN, P.C.
> Post Office Box 9848
> Savannah, GA  31412
> kmason@huntermaclean.com
> mfleming@huntermaclean.com

This 27th day of July, 2022.

> /s/ Joshua H. Norris
> Georgia Bar No. 545854