IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| S.C.G. a minor child, through his next friend, JAMANIC REAVES, and K.L.P., on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CANDICE BROCE, in her official capacity as COMMISSIONER OF THE GEORGIA DEPARTMENT OF HUMAN SERVICES,<br><br>Defendants. | Case No.: 1:22-CV-01324-LMM |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Defendant Candice Broce, in her official capacity as Commissioner of the Georgia Department of Human Services, (hereinafter "Defendant" or "DHS") files this Reply Brief in Support of Defendant's Motion to Dismiss, showing as follows:

**I.   STANDING**

Plaintiffs have no standing or their claims are already moot because they seek injunctive relief to force DHS to take specific actions in conjunction with case plans

or permanency plans which expired when Plaintiffs turned 18,[1] and to afford them notice and due process review of a denial of extended care benefits prior to any application for such benefits.[2] The Amended Complaint frames these claims in terms of actions Plaintiffs allege should have happened before they turned 18. Yet, in order to avoid dismissal of their claims based on lack of standing or mootness, Plaintiffs endeavor to make it appear as though there is a substantial continuing controversy regarding acts which allegedly should happen after their 18th birthdays. Plaintiffs' Amended Complaint and Georgia law, however, make it clear that this Court lacks subject matter jurisdiction and the remedies Plaintiffs seek would not redress their alleged injuries.

### A. Department of Family and Children Services' ("DFCS") Obligation to Implement Plaintiffs' Case Plans and Permanency Plans Expired When They Turned 18.

Plaintiffs argue that DFCS was obligated to retain and pay for an immigration attorney to apply for special immigrant juvenile status ("SIJS") as a part of DFCS's obligation to implement the Plaintiffs' respective case plans and permanency plans. Putting aside whether implementation of a case plan or permanency plan carries with

---

[1] Doc. 11 ¶¶ 55-57, 60-62; O.C.G.A. § 15-11-214(c).

[2] Doc. 11 ¶¶ 68-70.

it an obligation to retain and pay for immigration counsel (which it does not), the law is clear that DFCS's obligations to implement both case plans and permanency plans expire as a matter of law upon a child turning 18.

1.  Case Plans and Permanency Plans

Once a child enters DFCS custody, the child's caseworker prepares a case plan. *See* 42 U.S.C. § 671(a)(16); O.C.G.A. § 15-11-200; O.C.G.A. § 15-11-201. The case plan is submitted at an initial hearing to the juvenile court for adoption with or without modification. O.C.G.A. § 15-11-200. After a period of time, the juvenile court must also hold a permanency plan hearing to determine the future permanent legal status of each child in DFCS custody. O.C.G.A. § 15-11-230 (a) and (b). Thereafter, the court reviews the permanency plan at least every six months during the time a child is in DFCS custody. O.C.G.A. § 15-11-230 (c). At each permanency plan hearing, the juvenile court is required to make numerous findings of fact, including whether DFCS has made reasonable efforts to finalize the plan in effect, and DFCS's compliance with the permanency plan. O.C.G.A. § 15-11-232 (d).

Upon turning 18, a child in DFCS custody ages out of the foster care system, at which time the child is no longer entitled to dependency benefits, and "all orders in connection with dependency proceedings affecting him or her then in force terminate and he or she shall be discharged from further obligation or control."

O.C.G.A. § 15-11-214(c).[3]  Consequently, once Plaintiffs turned 18 (or, in the case of K.L.P., when the legislative extension ended), DHS had no further obligations relating to any previous case plans or permanency plans and the orders of the juvenile courts adopting those plans terminated.

2. <u>Any Obligation to Hire Immigration Counsel (Such Obligation is Denied) Expired When Each Child Turned 18 or Became Moot When Plaintiffs Secured Their Own Counsel</u>.

Putting aside whether implementation of a case plan or permanency plan carries with it a legal obligation for DFCS to retain and pay for immigration counsel for the Plaintiffs (which is denied),[4] Defendant has no ongoing obligations with regard to such case plans or permanency plans now that Plaintiffs have each turned 18 and the legislative extension has expired.  Plaintiffs' "injury" (*i.e.*, allegedly not having their permanency case plans followed before the orders adopting those plans terminated upon Plaintiffs' 18th birthdays) or not having obtained SIJS before turning 18, cannot be redressed by a favorable decision.  *Strickland v. Alexander*, 772 F. 3d 876, 883 (11th Cir. 2014).  Furthermore, since Plaintiffs have already

---

[3] While this period was briefly extended for K.L.P. due to legislation adopted during the COVID-19 pandemic, once the extension ended, the benefits were terminated automatically, as if she just turned 18. (*See* Motion to Dismiss, Doc. 13-1, p. 4, n.4).
[4] Plaintiffs cite no law which requires DFCS to pay for an immigration attorney for a child in foster care and there is no such law.

retained counsel and submitted their respective SIJS applications (prior to turning 18 and prior to suit being filed)[5], Plaintiffs fail to "allege facts from which it appears there is a substantial likelihood that [either] will suffer injury in the future." *Id.* Plaintiffs' claims must be dismissed because there is no actual, ongoing case or controversy that this Court may adjudicate. *See Brooks v. Ga. State Bd. of Elections*, 59 F. 3d 1114, 1118 (11th Cir. 1995).

### B. Similarly, Plaintiffs Lack Standing To Demand Notice And A Hearing For Extended Care Benefits For Which They Have Not Applied.

Plaintiffs contend that they meet the criteria to qualify for extended foster care benefits which, under certain circumstances, are available to 18 to 21 year old persons who age out of foster care. However, extended foster care benefits are not extended to young adults automatically upon turning 18. Instead, Plaintiffs must apply for such benefits by executing a voluntary placement agreement as required under O.C.G.A. § 15-11-340 (a), which states in relevant part:

> (a) A child may receive extended care youth services from DFCS. In order to receive such services, *he or she must* be between 18 and 21 years of age, *sign a voluntary placement agreement with DFCS*, and meet objective eligibility criteria established by DFCS . . .

---

[5] As stated previously, DFCS cannot control the timing for USCIS's consideration of an application, the availability of a visa number, or the length of time it may take Plaintiffs to obtain lawful permanent resident status.

O.C.G.A. § 15-11-340 (a) (emphasis supplied).  Plaintiffs have not executed or presented such agreement to the Defendant (nor do they allege having done so). While Plaintiffs suggest that they were not afforded this opportunity, the voluntary placement agreement form document is publicly available. *See* Exhibit 1, Georgia DFCS Voluntary Placement Agreement for Extended Foster Care Form.[6]  Due to their failure to execute the statutorily required voluntary placement agreement and proceed through the review process explicitly outlined in that document (as discussed more fully *infra*, Section III(B)), Plaintiffs have presented no justiciable case or controversy regarding a right to further due process and this Court lacks subject matter jurisdiction over those claims.  *Strickland*, 772 F. 3d at 882-83.

Plaintiffs' claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because this Court lacks subject matter jurisdiction.  Plaintiffs lack standing or their claims are moot.  As discussed in the Motion to Dismiss (and not responded to by Plaintiffs), since the class has not been certified, the entire class action must be dismissed under these circumstances.

---

[6] The Georgia DFCS Voluntary Placement Agreement Form is available on the State of Georgia's Online Directives Information System website: https://odis.dhs.ga.gov/General.

## II.  ABSTENTION

Abstention is appropriate because there is judicial oversight available and provided to children in DFCS custody relative to the development and implementation of case plans and permanency plans, and this Court would be usurping the authority of the juvenile courts and required to micromanage the underlying case plans of each putative class member throughout their stay in foster care.  Plaintiffs contend that *Younger* abstention is inappropriate because the underlying state court cases that would be impacted by a ruling by this Court do not fall into any of the three categories set forth in *Sprint*.[7]  (Doc. 21, pp. 13-16). Plaintiffs' arguments are unavailing, and this Court should abstain from exercising jurisdiction over this matter.

### A.  Under the *Sprint* Analysis, Abstention is Still Warranted.

---

[7] Juvenile court proceedings, like the ones which would be impacted for each class member who is under 18 and still in DFCS custody, constitute ongoing judicial proceedings for purposes of *Younger* abstention analysis. *See Lamons v. Jordan*, No. 5:13cv373/RS/EMT, 2014 U.S. Dist. LEXIS 46778, at *15-18 n.3 (N.D. Fla. Mar. 26, 2014) (a post-*Sprint* decision holding that Florida's similar juvenile court statute requiring oversight hearings at least every six months qualifies as an ongoing proceeding for *Younger* analysis and noting that "[t]he pending state proceedings need not be a single trial that is expected to resolve all issues in a matter.") (internal citations omitted). (*See also* Doc. 13-1, pp. 13-15).

Plaintiffs' argument that *Sprint* calls for a different legal analysis or results in a different outcome is misplaced. Plaintiffs contend that the underlying juvenile court cases pending for all children in DFCS custody do not involve any ongoing: (1) state criminal prosecution, (2) civil enforcement proceeding, or (3) civil proceeding involving orders in furtherance of a state court's ability to perform its judicial functions, and that, as a result, this Court does not even need to move onto the *Younger* elements. *Id.* (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013)).

Even after *Sprint*, 11th Circuit courts have not always strictly followed that case's analytic framework. *See, e.g., White v. Cox,* No. 21-11337, 2021 U.S. App. LEXIS 35107, at *4 (11th Cir. Nov. 29, 2021) (not citing *Sprint* but citing *31 Foster Children*[8] and then jumping straight to the three-pronged analysis set forth in the latter case). This sometimes occurs in instances where the analyzing court collapses the third *Sprint* prong (*i.e.,* a civil proceeding is at issue involving orders in

---

[8] Plaintiffs imply that *31 Foster Children*, a chief case cited by Defendant, should be disregarded because it predates *Sprint*. (*See* Doc. 21, p. 16). However, as recently as last year, that case was held to be good law. *See A.A. v. Buckner* 2021 U.S. Dist. LEXIS 209247, at *17 (M.D. Ala. Oct. 29, 2021) (rejecting argument that *31 Foster Children* is no longer controlling in the 11th Circuit and noting that *31 Foster Children* engaged in the type of analysis later set forth in *Sprint*.).

furtherance of a state court's ability to perform its judicial functions) into the first *Younger* prong (*i.e.,* the plaintiff's requested relief would interfere with state judicial proceedings) because the two issues significantly overlap. *See, e.g., Shepherd v. United States Bank, Nat'l Ass'n*, 839 F. App'x 304, 306 (11th Cir. 2020) (collapsing the analysis). This is a case where such overlap exists because the case plans and permanency plans (which are adopted as juvenile court orders) Plaintiffs ask this Court to modify are central to the juvenile court's ability to perform its express judicial function of managing Georgia's dependency proceedings.[9]

Whether the Court considers the *Sprint* and *Younger* factors separately or together, abstention is warranted here. Plaintiffs ask this Court to substitute its judgment for the judgment of Georgia's juvenile courts, for example by ordering the amendment of case plans and permanency plans (which are adopted as juvenile court

---

[9] Georgia's juvenile courts are uniquely enshrined in the State's Constitution and statutorily empowered to oversee and administer the exact dependency proceedings in which Plaintiffs ask this Court to insert itself. Ga. Const. Art. VI, § I, Para. I (vesting power in the juvenile court system); O.C.G.A. §§ 15-11-1 (setting forth the purpose of the juvenile court system in general), -100 (setting forth the purpose of the juvenile court system in overseeing dependency proceedings); *see also* DAVIS & SHULMAN'S GA PRACTICE AND PROC. § 2:9 (2020-21 ed.) ("[T]he juvenile court is granted exclusive original jurisdiction over juvenile matters and shall be *the sole court* for initiating action concerning any child who is[,]" among other things "alleged to be a child in need of services" or "alleged to be a dependent child[.]") (emphasis supplied). In other words, Plaintiffs' requested relief would interfere with state court *judicial* functions.

9

orders) to include timetables to accomplish certain immigration goals and require DFCS to hire immigration counsel.[10] For a federal court to dictate the substance and progress of a juvenile court proceeding would be analogous to a Georgia state court issuing an order in one of this Court's cases. That is the precise type of "unseemly conflict between state and federal judges" abstention is intended to prevent. *Luckey v. Miller*, 976 F.2d 673, 679 (11th Cir. 1992).

### B. Plaintiffs do not rebut DHS's analysis of the *Younger* elements.

Plaintiffs leave unaddressed, and thus do not challenge, DHS's analysis of the *Younger* elements, *to wit*: that (i) Plaintiffs' requested relief would interfere with pending state judicial proceedings, (ii) that the state proceedings involve important state interests, and (iii) Plaintiffs have failed to press their claims in the underlying state court proceedings. (Doc.13, p. 12-17). "When a plaintiff fails to respond to an argument in a motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b), granting the motion based solely on the party's failure to respond to that argument

---

[10] Post-*Sprint* decisions in the 11th Circuit have held that this type of intervention in juvenile court proceedings falls within the third *Sprint* prong. *E.g., Lamons*, No. 5:13-CV-373/RS/EMT, 2014 U.S. Dist. LEXIS 46778, at *15; *Buckner*, No. 2:21-CV-367/ECM, 2021 U.S. Dist. LEXIS 209247, at *17; *see also Saleh v. Florida*, No. 3:17-cv-1465-J-34/PDB, 2018 U.S. Dist. LEXIS 2169, at *16 (M.D. Fla. Jan. 5, 2018).

is within the discretion of a district judge." *Palacious v. Lienhard*, No. 1:15-CV-01683-TCB-JFK, 2015 U.S. Dist. LEXIS 180767, at *35 (N.D. Ga. Dec. 30, 2015) (holding that *Rooker-Feldman* abstention was warranted) (citing *Magluta v. Samples*, 162 F.3d 662, 664-65 (11th Cir. 1998)).

In sum, since this case falls into the third *Sprint* category, and because all *Younger* elements are met, abstention, and thus dismissal, is warranted.

### III. FAILURE TO STATE A CLAIM

Plaintiffs acknowledge that their Amended Complaint must contain sufficient factual matter to state a claim for relief and must offer sufficient factual content to draw an inference that defendant is liable for the misconduct alleged. (Doc. 21, pp. 16-17). It is precisely the lack of factual content to support a claim that is at issue. While the Court may accept the facts alleged in the Amended Complaint as true for purposes of considering a Motion to Dismiss, it is not required to accept conclusory allegations unsupported by facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

#### A. Plaintiffs Fail to State a Claim Under the Adoption Assistance and Child Welfare Act or O.C.G.A. § 15-11-220, *et seq*.

The principal focus of foster care is to provide children safe shelter, food, clothing, medical care, and access to education. Foster children may benefit from

other services and receive assistance from other sources. In fact, in delivering services and establishing priorities, DFCS is specifically directed, by statute, to consider the available community resources, including charitable sources available to children in foster care. O.C.G.A. § 15-11-202(c).

While contending that Defendant has a duty to retain immigration counsel on Plaintiffs' behalf, Plaintiffs fail to account for the fact that there is no legal mandate requiring, or even authorizing, Defendant to pay for such services. Indeed, under, at a minimum, current DFCS policy, DFCS is prohibited from paying for immigration counsel. Furthermore, Defendant has a statutory duty to utilize community and charitable resources in the provision of services to Plaintiffs. *Id.* In other words, there is no legal obligation for DFCS to provide every service a child in foster care might benefit from or to pay for all services which are desired under the case or permanency plan. DFCS facilitates the identification of community services and *pro bono* legal counsel who provide such assistance. Even putting aside that the law does not require DFCS to retain and pay for immigration attorneys for Plaintiffs, Plaintiffs fail to state a claim because they, *in fact, did not need DFCS to do so*; both Plaintiffs retained immigration counsel prior to leaving foster care *and* each Plaintiff applied for SIJS with the assistance of an immigration attorney prior to turning 18 and prior to filing suit.

Plaintiffs allege that DFCS failed to "timely pursue" SIJS on behalf of Plaintiffs by failing to pay for immigration counsel on their behalf, without providing any factual allegations to support the bare and conclusory assertion. Plaintiffs acknowledge that the juvenile court must first determine that Plaintiffs could not be reunified with family or repatriated to their home country before they become eligible to file a SIJS application.  Yet, they fail to plead *when* this occurred for each Plaintiff and *when* Defendant's efforts were first made to pursue SIJS (which has many facets), let alone the time *when* immigration counsel was secured for each Plaintiff.  Plaintiffs also do not allege what would have been "timely" actions by DFCS or identify any law or rule that created an obligation for DFCS to act on this issue within a certain timeframe.  Without more, Plaintiffs' allegations of untimely action are merely bare conclusions insufficient to state a cognizable claim and should be dismissed.

### B. Plaintiffs Fail to State a Due Process Claim

Plaintiffs correctly state that for due process to attach to a "property right," they must have a legitimate claim of entitlement to the property and not merely and abstract need or desire for it.  (Doc. 21, p. 20).  In this instance, Plaintiffs must demonstrate that they have taken the necessary steps to avail themselves of extended

foster care benefits to trigger any determination of eligibility,[11] notice, and opportunity to redress any denial of benefits. As discussed *supra*, Plaintiffs have not alleged that they signed the voluntary placement agreement (or even attempted to do so).

Further, due process safeguards exist at various stages along the way. In fact, the voluntary placement agreement provides a mechanism for review at the application stage:

> **NOTE:** The young adult must be provided a copy of this completed form. If the Extended Foster Care request is not mutually agreed upon by the County Department, it must be referred to the State GA RYSE/Chafee Program Director for review.

Exhibit 1, p. 4. Plaintiffs do not allege that they were unable to mutually agree with their respective County Director or Case Manager (both of whom must also sign the voluntary placement agreement) to their extended foster care request or that they

---

[11] The Court need not reach Plaintiffs' arguments that SIJS alone meets the definition of "qualified alien" under 8 U.S.C. § 1641 (which is not correct) or that extended foster care benefits are excepted from 8 U.S.C. § 1621 and O.C.G.A. § 50-36-1 (which, at a minimum, would require a presentation of more facts than are presently before the Court). Plaintiffs seek an injunction "enjoining Defendant from denying Plaintiffs extended foster care services *without due process of law*" not an injunction to prevent denial of the benefits altogether or a ruling from this Court about whether they are ultimately entitled to such benefits notwithstanding their immigration status.

sought review by the State of Georgia RYSE/Chafee Program Director or anyone else. This is fatal to their due process claim.

Plaintiffs' "property interest" (if any) in extended foster care is created and defined by the statute. *See Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and *their dimensions are defined by* existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that supports claims of entitlement to those benefits.") (emphasis supplied). Plaintiffs do not allege facts that show a legitimate claim of entitlement to extended foster care benefits because they have not taken the necessary steps *outlined in that statute* to obtain any such benefits or to even trigger a determination of their entitlement to the same. *See* O.C.G.A. § 15-11-340(a). Plaintiffs, therefore, fail to state a due process claim as a matter of law.

WHEREFORE, Defendant prays the Court grants her Motion to Dismiss.

I certify that the foregoing has been prepared with Times New Roman font in 14-point size, as approved by the Court in N.D. Ga. Local Rule 5.1(C).

This 10th day of August 2022.

| | |
|---|---|
| */s/ Christopher M. Carr* | */s/T. Mills Fleming* |
| CHRISTOPHER M. CARR   112505<br>Attorney General<br>Georgia Department of Law<br>40 Capitol Square NW<br>Atlanta, Georgia 30334 | T. MILLS FLEMING           263560<br>Special Assistant Attorney General<br>Hunter, Maclean, Exley & Dunn, P.C.<br>Post Office Box 9848<br>Savannah, Georgia 31412<br>Telephone: (912) 236-0261<br>Facsimile: (912) 236-4936<br>Email: mfleming@huntermaclean.com |
| */s/Bryan K. Webb* | */s/Kirby G. Mason* |
| BRYAN K. WEBB           743580<br>Deputy Attorney General<br>Georgia Department of Law<br>40 Capitol Square NW<br>Atlanta, Georgia 30334 | KIRBY G. MASON           302310<br>Hunter, Maclean, Exley & Dunn, P.C.<br>Post Office Box 9848<br>Savannah, Georgia 31412<br>Telephone: (912) 236-0261<br>Facsimile: (912) 236-4936<br>Email: kmason@huntermaclean.com |
| */s/Shalen S. Nelson* | |
| SHALEN S. NELSON         636575<br>Senior Assistant Attorney General<br>Georgia Department of Law<br>40 Capitol Square NW<br>Atlanta, Georgia 30334 | |

4886-3636-7917 v2

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** upon all parties to this matter by using the CM/ECF system which will send a notice of electronic filing to the following:

Thomas C. Rawlings
Deborah A. Ausburn
Taylor English and Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339

Joshua H. Norris
Law Office of Joshua H. Norris, LLC
One West Court Square, Suite 750
Decatur, Georgia 30030

This 10th day of August 2022.

*/s/ Christopher M. Carr*
CHRISTOPHER M. CARR
112505
Attorney General
Georgia Department of Law
40 Capitol Square NW
Atlanta, Georgia 30334

*/s/Bryan K. Webb*
BRYAN K. WEBB            743580
Deputy Attorney General
Georgia Department of Law
40 Capitol Square NW
Atlanta, Georgia 30334

*/s/Shalen S. Nelson*
SHALEN S. NELSON        636575
Senior Assistant Attorney General
Georgia Department of Law
40 Capitol Square NW
Atlanta, Georgia 30334

*/s/T. Mills Fleming*
T. MILLS FLEMING          263560
Special Assistant Attorney General
Hunter, Maclean, Exley & Dunn, P.C.
Post Office Box 9848
Savannah, Georgia 31412
Telephone: (912) 236-0261
Email: mfleming@huntermaclean.com

*/s/Kirby G. Mason*
KIRBY G. MASON            302310
Hunter, Maclean, Exley & Dunn, P.C.
Post Office Box 9848
Savannah, Georgia 31412
Telephone: (912) 236-0261
Email: kmason@huntermaclean.com

4886-3636-7917 v2