IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| S.C.G., *a minor child, through next friend* Jamanic Reaves; JAMANIC REAVES, *as next friend to S.C.G.*; and K.L.P., *on behalf of themselves and all others similarly situated*, | : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : : | CIVIL ACTION NO. 1:22-cv-01324-LMM |
| CANDICE BROCE, *in her official capacity as Commissioner of the Georgia Department of Human Services*, | : : : : : : | |
| Defendant. | : | |

**ORDER**

This case comes before the Court on Defendant's Motion to Dismiss the Amended Complaint [13]. After due consideration, the Court enters the following Order.

**I.    BACKGROUND**

Plaintiffs are two undocumented individuals who were in the custody of the Georgia Division of Family and Children Services ("DFCS") before turning eighteen. They are filing this lawsuit on behalf of themselves and other similarly

situated individuals.[1] Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. § 1983 against Defendant Candice Broce, in her official capacity as the Commissioner of the Department of Human Services for the State of Georgia. Plaintiffs' allegations relate to the legal services and benefits provided to undocumented individuals in Georgia's foster care system.

Plaintiffs raise two sets of claims in their Amended Complaint. The first set relates to Defendant's obligation to provide legal counsel to qualifying undocumented individuals to help them apply for and receive Special Immigrant Juvenile ("SIJ") classification as part of their foster care case plans. SIJ status provides certain children who have been subject to state juvenile court proceedings related to abuse, neglect, abandonment the ability to seek lawful permanent residence in the United States. Plaintiffs refer to DFCS Policy No. 10.17, which provides guidance in relation to undocumented immigrant children. In that DFCS Policy, the agency indicates its stance that "[a]n immigration attorney cannot be paid with government funds; they may assist on a pro bono basis or be paid with non-government funds." Dkt. No. [11-1] at 4. Plaintiffs allege that Defendant's failure to secure legal counsel for them to apply for and receive SIJ classification before turning eighteen violates federal law (42 U.S.C. § 671 *et seq.*) as well as Georgia law (O.C.G.A. § 15-11-200 *et seq.*). Because DFCS did not assign them attorneys for this purpose, both named Plaintiffs had to

---

[1] Although one of the named Plaintiffs, S.C.G., was under the age of eighteen when this lawsuit was filed, both named Plaintiffs are now over eighteen.

independently locate and engage pro bono attorneys to apply for SIJ classification. Dkt. No. [11] ¶ 31. Despite applying for SIJ classification, neither named Plaintiff has received it. Id. ¶¶ 32–33.

Plaintiffs' second set of claims relates to their procedural due process rights concerning Georgia's extended foster care services, which certain qualifying individuals from ages eighteen to twenty-one are eligible to receive. Plaintiffs allege that they are entitled to extended foster care services under O.C.G.A. § 15-11-340 and that Defendant violates the Due Process Clause of the Fourteenth Amendment and the Georgia Constitution by denying them these services without notice and an opportunity to be heard. Id. ¶¶ 68, 74.

Plaintiffs bring this action as a statewide class action on behalf of certain undocumented individuals under twenty-one years old who were in custody of DFCS when they turned eighteen years old. Id. ¶ 50.

## II.   DISCUSSION

The Court will first address the claims about Plaintiffs' access to counsel, Counts I and II, and then the claims about Plaintiffs' access to extended foster care services, Counts III and IV.

### A. Count I & Count II

While Defendant has argued that Counts I and II should be dismissed for a myriad of reasons, the Court will begin by addressing Defendant's standing arguments. Defendant argues that Plaintiffs lack standing and/or that their claims are moot because both named Plaintiffs are now over eighteen years old

3

and have already applied for SIJ classification, making it unlikely that they will suffer any future injury and suggesting that their requested relief would not benefit them.

Plaintiffs argue that Defendant still has an obligation to them (which could be carried out through injunctive or declaratory relief from this Court) because they are not *per se* disqualified from receiving extended foster care services despite their immigration status.[2] While acknowledging that both named Plaintiffs had *pro bono* counsel that actually submitted SIJ applications on their behalf, Plaintiffs argue that Defendant has an obligation to ensure their access to counsel throughout the process until their SIJ classification is secured. Plaintiffs also reiterate that they are subject to immediate ongoing harm because they lack lawful status to remain in the country.

To meet the "irreducible constitutional minimum of standing," Plaintiffs must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." Spokeo, Inc., 578 U.S. at 338 (alterations adopted, quotation marks omitted). Further, "it is

---

[2] Because it is ancillary to the Court's decision, the Court makes no comment as to Plaintiffs' or Defendant's legal theories about undocumented individuals' eligibility for extended foster care services or the use of state funds for immigration counsel.

axiomatic that a federal action must present a real case or controversy under Article III of the Constitution." Gagliardi v. TJCV Land Tr., 889 F.3d 728, 732 (11th Cir. 2018). That requirement must be met at a case's inception, and "a justiciable case or controversy" must be "present 'at all stages of review.'" Id. at 733 (quoting Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1190 (11th Cir. 2011)). When a case is filed as a class action, that "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." Id. n.6 (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 40 n.20 (1976)).

The case-or-controversy requirement also applies to actions for declaratory or injunctive relief such as this one. To obtain such relief, a plaintiff "must allege and ultimately prove 'a real and immediate—as opposed to a merely hypothetical or conjectural—threat of future injury.'" Strickland v. Alexander, 772 F.3d 876, 883 (11th Cir. 2014) (quoting Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994)). When that threat no longer exists, a plaintiff's claims are moot. See 31 Foster Child. v. Bush, 329 F.3d 1255, 1263 (11th Cir. 2003).

The Court finds that Plaintiffs have not established the justiciability of their claims in Count I and Count II. There are three problems with these claims as pled. First, both these claims seek to bring about a material condition that the named Plaintiffs have already achieved: access to legal counsel to apply for SIJ classification. Critically, the Amended Complaint emphasizes the SIJ application,

not any continued legal work or the need to re-apply for SIJ classification. There is also no indication that the named Plaintiffs' pro bono counsel have abandoned them or that they are otherwise without immigration counsel. Even if Plaintiffs are correct that they should not have been required to secure that counsel because Defendant should have provided it, Plaintiffs fail to show how any declaratory or injunctive relief requiring Defendant to provide counsel to apply for SIJ classification could benefit them. As the Supreme Court has stated, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (some internal quotation marks omitted). Plaintiffs have failed to make such a showing.

Second, these Counts fail because both named Plaintiffs are over eighteen and there is no longer any "live" controversy to be addressed. Although Plaintiffs make many arguments about Defendant's continuing obligation to Plaintiffs after they turn eighteen through extended foster care services, the Amended Complaint is keyed to Defendant's obligations to secure counsel, file an SIJ application, and ensure their lawful status *before* they turned eighteen. Dkt. No. [11] ¶¶ 55, 60. In Count I, Plaintiffs allege that Defendant violated the federal Adoption Assistance and Child Welfare Act by "failing to timely secure legal counsel for them to apply for the SIJ classification and secure their lawful status prior to turning 18." Id. ¶ 55. Count II makes a nearly identical allegation under Georgia law, again indicating that Defendant is acting illegally by "failing to

timely secure legal counsel for them to apply for the SIJ classification and secure their lawful status prior to turning 18." Id. ¶ 60. In other words, regardless of any actual obligation Defendant may have had to Plaintiffs after reaching the age of majority, the Amended Complaint narrowly framed Counts I and II to Defendant's acts against Plaintiffs at a previous point in time. "[W]hen the reviewing court can no longer offer any effective relief" to a prevailing party, a case becomes moot. Gagliardi, 889 F.3d at 733. "[A]n action that is moot cannot be characterized as an active case or controversy." Hall v. Sec'y, Ala., 902 F.3d 1294, 1297 (11th Cir. 2018) (quoting Al Najjar v. Ashcroft, 273 F.3d 1330, 1335 (11th Cir. 2001) (per curiam)).[3]

Third, to the extent Plaintiffs' claims seek "secure legal status," that is not a redressable injury in this suit either. Dkt. No. [11] ¶¶ 55, 60. Plaintiffs attempt to create a redressable injury by explaining that they still have not received SIJ classification, arguing that they also have an interest in ongoing legal representation until their immigration status is secured. Putting aside the issue of whether the potential need for future counsel is too speculative to be considered

---

[3] To be precise, the Court finds that the named Plaintiff that had already turned eighteen before the lawsuit was filed (S.C.G.) lacked standing to bring these claims and that the claims brought by the named Plaintiff who turned eighteen shortly after it was filed (K.L.P.) are mooted. A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co., 925 F.3d 1205, 1212 n.2 (11th Cir. 2019) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980))).

an injury, the Court finds that Plaintiffs have not demonstrated redressability. Both Count I and Count II frame their allegations of irreparable harm as being tied to the fact that "their status in the United States is not secured . . . upon turning 18 years of age in direct contradiction to their permanency plans." Dkt. No. [11] ¶¶ 56, 61. However, Defendant Broce is unable to ultimately determine the outcome for Plaintiffs' immigration status and, accordingly, this Court is not poised to rule in a way that ensures Plaintiffs' lawful presence in the country. Lujan, 504 U.S. at 569 (noting that, in multi-agency issue, "resolution by the District Court would not have remedied respondents' alleged injury anyway, because it would not have been binding upon the agencies"). The fact that the named Plaintiffs were able to secure legal counsel but still have not received SIJ classification demonstrates this problem—receiving counsel is just the first step in that process.

Because the Court finds the named Plaintiffs lack standing to bring Count I and Count II as pled, these claims must be dismissed. Wilding v. DNC Servs. Corp., 941 F.3d 1116, 1124 (11th Cir. 2019) (explaining that at least one named plaintiff must have standing to pursue claim on behalf of class); Town of Chester, N.Y. v. Laroe Ests., Inc., 581 U.S. 433, 439 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint.").

### B. Counts III and IV

Plaintiffs' second set of claims relates to the procedural due process owed to undocumented individuals in foster care who seek extended foster care

8

services. Plaintiffs allege that the named Plaintiffs (and other similarly situated undocumented youth in DFCS custody who do not or did not find a permanent home before turning eighteen) are entitled to continued foster care services. Dkt. No. [11] ¶ 67, 73. Plaintiffs allege that denial of those extended foster care services without notice and an opportunity to be heard violates Plaintiffs' rights under the Due Process Clauses of the Georgia Constitution and the Fourteenth Amendment of the United States Constitution. Id. ¶¶ 68, 74. Like with the prior Counts, these Counts contain nearly identical allegations but seek relief under federal and Georgia law, respectively.[4] While Defendant raised multiple reasons for these Counts' dismissal, the Court will begin by addressing Defendant's argument that these claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[5]

---

[4] Plaintiffs argue, and Defendant does not contest, that the Georgia Supreme Court interprets Georgia's due process clause in the same way as the U.S. Constitution's counterpart. Dkt. No. [21] at 20 n.1. Based on the parties' arguments and the Court's review of precedent, it appears that these claims can be considered together because the two clauses operate similarly in the respects important to this case.

[5] While standing is a threshold issue, the Court finds it more appropriate to proceed by analyzing the validity of Plaintiffs' claims under Rule 12(b)(6), particularly because Defendant's standing arguments are less persuasive against these claims that relate to benefits Plaintiffs were eligible for receiving after they turned eighteen. The Court also finds it unnecessary to evaluate Defendant's Younger abstention doctrine arguments given that Plaintiffs will need to re-plead their claims in order to proceed, which may affect the outcome of the Younger doctrine analysis. See Younger v. Harris, 401 U.S. 37 (1971).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads factual content necessary for a court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556). At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). But this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678.

Defendant argues that Plaintiffs cannot have a successful procedural due process claim because they have not adequately alleged that they applied for the extended foster care services that they claim they were denied. Plaintiffs do not directly address the issue of whether they have applied for extended foster care

10

services in their response or in their Amended Complaint, though Plaintiffs do allege that one of the named Plaintiffs did receive extended foster care services. Instead, Plaintiffs' Amended Complaint rests on the legal conclusion that Plaintiffs were entitled to receive extended foster care services.

As the Supreme Court has articulated, "[t]he procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit.'" Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. And, the contours of those property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id. Here, Georgia law provides that, to receive extended foster care services, individuals must "be between 18 and 21 years of age, sign a voluntary placement agreement with DFCS, and meet objective eligibility criteria established by DFCS." O.C.G.A. § 15-11-340. Accordingly, by the statute's terms, enrollment in extended foster care services is not automatic. At a minimum, applicants must sign a voluntary placement agreement. Id.; see also O.C.G.A § 15-11-341 (explaining process to be followed to initiate extended foster care services "[n]o later than 120 days after a voluntary placement agreement is signed by a child").

The Court finds that Plaintiffs have not adequately pled a due process claim under Georgia or federal law. To show that they had a legitimate claim of

entitlement to extended foster care services, Plaintiffs must allege that they had more than a "mere subjective expectancy" that they would be given access to the program based on their qualifications. Perry v. Sindermann, 408 U.S. 593, 603 (1972); see also Durham v. Jones, 689 F.2d 1179, 1181 (11th Cir. 1983). However, Plaintiffs have not presented their allegations in a way that the Court can review them and determine if they are subject to relief. The Court is unable to parse through Plaintiffs' allegations that appear incomplete or, in some cases, contradictory, for either of the named Plaintiffs or for their class-wide allegations.

As to Plaintiff S.C.G., the Amended Complaint alleges that S.C.G. was "not afforded by Defendant an opportunity to apply for extended foster care services," and that he was not informed "that he was denied extended foster care services or provided an opportunity to request a hearing to challenge the denial." Dkt. No. [11] ¶¶ 46–47. Plaintiffs' assertion that S.C.G. was not given the opportunity to apply, without context or more detail, evades review by the Court. While there could be a viable due process claim based on a legally cognizable barrier to applying for these benefits, Plaintiffs have not articulated what that would be or how it affected S.C.G. (or the putative class members). Further, the allegation that S.C.G. was "denied" extended foster care services without effective process appears to be in contradiction with the claim that he was not able to apply for

those benefits.⁶ And, as discussed below, the Court finds puzzling why Plaintiff S.C.G. was unable to apply for extended foster care services given that another undocumented individual, K.L.P., actually received these benefits for a time. The apparent difference in experience between K.L.P. and S.C.G.—who are both undocumented—introduces additional questions as to whether Plaintiffs' issues with DFCS are related to their immigration status.

As to Plaintiff K.L.P., the Amended Complaint alleges that she was "provided extended foster care services after turning 18 but was ejected from extended foster care by Defendant around November, 2021." Dkt. No. [11] ¶ 44. The Amended Complaint does not explain under what circumstances she was extended these benefits or whether she ever applied for them.⁷ Plaintiffs do allege that, at the point her benefits were terminated, K.L.P. "was not provided by Defendant with notice of the reasons for the denial of extended foster care services nor was she provided an opportunity to request a hearing to challenge the denial." Id. ¶ 45. While termination of benefits without explanation could potentially serve as the basis for a legally viable due process claim, the Amended

---

⁶ As explained above, the text of Georgia's statute requires a signed voluntary placement agreement before an individual can be considered eligible for extended foster care services. See O.C.G.A. § 15-11-340. Plaintiffs have not alleged that S.C.G. signed one, or otherwise explained why he was unlawfully barred from participating in the application process.

⁷ Defendant suggests that this may have been related to a temporary extension for Covid-19, but the Court must evaluate the allegations in Plaintiffs' Amended Complaint.

Complaint does not explain the circumstances under which K.L.P. was provided for these services in the first place or their termination so as to show that she was entitled to additional due process protections. Again, Plaintiffs must tailor their claims to explain exactly what legitimate claim of entitlement they had to these benefits and the specifics of their interaction with DFCS and the extended foster care services program to demonstrate that their due process rights were violated.

As to the putative class members, it is not clear from the Amended Complaint what violations (if any) are taking place on a class-wide basis. Given the Court's analysis above about the apparent requirement for individuals to sign a voluntary placement agreement, it appears the class claims similarly fail because no allegation has been made about unidentified class members' role in pursuing extended foster care services. Accordingly, Plaintiffs' class allegations under Counts III and IV also fail to state a claim upon which relief can be granted because they fail to show that the class members had a legitimate claim of entitlement to the program.[8] Plaintiffs' legally conclusory statements are insufficient to support the claim. Iqbal, 556 U.S. at 678.

On a related note, the Court notes ambiguity in the Amended Complaint as to whether any alleged procedural due process deficiency is unique to undocumented individuals in foster care or whether they challenge the process

---

[8] Just like the Court considered with respect to S.C.G., the putative class members could conceivably have a claim based on a legally cognizable barrier to applying for extended foster care services. However, Plaintiffs have not alleged what barriers exist to prevent the class members from receiving those benefits.

14

provided for receiving extended foster care services more generally. As it stands, the Court finds that Plaintiffs have not adequately tied these claims to their immigration status or to the class-wide relief requested. That makes it difficult for the Court to grant any particular declaratory or injunctive relief, particularly class-wide, without a clear picture of the scope of the problem and whether it is an immigration-related issue or a generalized problem with DFCS.

Finally, it is not clear whether Plaintiffs allege that Georgia's statutory process for applying for extended foster care services is not being carried out or whether they are challenging the statute's process as facially insufficient. While the Court does not comment on its sufficiency, there are some procedural guardrails written into Georgia's extended foster care services statute. For example, it provides that DFCS may terminate extended foster care services with "written or electronic notice to such child regarding such termination and to the court that approved such services." O.C.G.A. § 15-11-340(d). Additionally, the state court's oversight of the extended foster care services includes holding a hearing and issuing a written order on the matter. O.C.G.A. § 15-11-341(b). Plaintiffs should articulate whether they are alleging that this statutory obligation was not met or whether they find it to be constitutionally insufficient.

Because Plaintiffs have not adequately pled that they had a legitimate claim of entitlement to extended foster care services and were given insufficient process, Counts III and IV fail. Town of Castle Rock, 545 U.S. at 756. The Court finds that denying Defendant's motion without prejudice and granting Plaintiffs

15

leave to re-plead is the appropriate remedy here. The Eleventh Circuit has acknowledged district court's inherent authority to order a plaintiff to replead their complaint where it "lacks the requisite specificity." Magluta v. Samples, 256 F.3d 1282, 1285 (11th Cir. 2001). Additionally, the Court finds that the interests of justice favor granting Plaintiffs leave to amend as to the procedural due process claims. Fed. R. Civ. P. 15(a)(2).

### III. CONCLUSION

In accordance with the foregoing, the Defendant's Motion to Dismiss Amended Complaint [13] is **GRANTED**. Plaintiffs' Amended Complaint [11] is **DISMISSED** without prejudice. Plaintiffs may file a Second Amended Complaint within twenty-one days of this Order as to the procedural due process claims.

**IT IS SO ORDERED** this 29th day of March, 2023.

_____
**Leigh Martin May**
**United States District Judge**